**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NICOLE SNODGRASS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 83A01-1308-CR-370 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VERMILLION CIRCUIT COURT
The Honorable Bruce V. Stengel, Judge
Cause No. 83C01-1211-FB-18

**April 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Nicole Snodgrass appeals her sentence for two counts of dealing in a Schedule II controlled substance as class B felonies and three counts of theft as class D felonies. Snodgrass raises two issues, which we revise and restate as:

I.      Whether the trial court abused its discretion in sentencing her; and

II.     Whether her sentence is inappropriate in light of the nature of the offense and her character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Snodgrass, an employee of CVS Pharmacy in Clinton, Indiana, took from the pharmacy approximately 500 hydrocodone tablets in December 2011, approximately 500 tablets in January 2012, and approximately 500 tablets in May 2012. In addition, in April and in May 2012, Snodgrass possessed hydrocodone, a Schedule II controlled substance, with intent to deliver. On November 8, 2012, the State charged her with two counts of dealing in a Schedule II controlled substance (hydrocodone) as class B felonies and three counts of theft as class D felonies. On June 24, 2013, she pled guilty as charged.

At sentencing, Snodgrass's defense counsel indicated that he and Snodgrass had a chance to review the presentence investigation report (the "PSI") and did not have any additions or corrections. A supplemental case report summarizing Snodgrass's statements to law enforcement was attached to the PSI and before the court at sentencing. Snodgrass's mother indicated that her husband owns firearms, that he had expressed reluctance in removing the firearms from the home, and that she could not say with certainty that there would be no firearms in the house. Snodgrass by counsel requested that she receive ten-year sentences for each of the class B felonies and one and one-half

2

years for each of the class D felonies, all to be served concurrently, with a significant portion served on probation and the entire executed portion of the sentence to be served on home detention. Defense counsel stated during closing arguments that Snodgrass was living with her mother and stepfather, that they had expressed reluctance in removing their firearms from the home, and if they were unwilling to do so Vigo County Community Corrections would not be willing to supervise her on house arrest. Defense counsel also noted that the home of the father of Snodgrass's child was an alternative home for home detention. The trial court found that Snodgrass pled guilty without a plea agreement, and that her criminal record, that she has a child, and her health issues were mitigating circumstances. The court also found the facts that Snodgrass went to work for CVS Pharmacy with a substance problem, that she was placed in a position of trust to deal with drugs and people, and that she attempted to minimize her involvement in the offenses to be aggravating circumstances. The court noted that, when Snodgrass's cousin was asked if Snodgrass ever mentioned anyone else to whom she had provided pills, the cousin indicated that Snodgrass said she had been providing pills to her child's father so he could distribute to his friends, and found that the home of the father of Snodgrass's child would not be considered as a potential home placement. The court also noted that it had heard testimony that Snodgrass could not serve home detention at her mother's house and thus that "we really don't have a place for in home detention." Sentencing Transcript at 92.

The court sentenced Snodgrass to six years each for her class B felony convictions, to run consecutive to each other, and one and one-half years each for her

3

class D felony convictions, to run concurrent with each other and the sentences for the class B felonies, for an aggregate sentence of twelve years.

DISCUSSION

I.

The first issue is whether the trial court abused its discretion in sentencing Snodgrass. We review Snodgrass's argument that the trial court improperly considered aggravators and mitigators for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any— but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Id. at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id.

Snodgrass contends that the court abused its discretion in finding that the aggravating circumstances include that she began working at CVS Pharmacy with the intent to steal drugs and that she attempted to minimize her criminal activity. Snodgrass further argues that the court abused its discretion in finding that her parenting skills were so inadequate that it would not consider as a "big mitigating factor" that incarceration would cause undue hardship for her young child. Appellant's Brief at 14. She also argues that the court abused its discretion in finding that the home of her child's father would be inappropriate as a site for her home detention. The State contends that the record supports the trial court's findings, that it did not abuse its discretion in finding the aggravating and mitigating circumstances in sentencing Snodgrass, and the court did not err in finding the home of her child's father would not be an appropriate site for home detention.

With respect to the aggravating circumstances challenged by Snodgrass, she testified in part at sentencing: "I started working for CVS, um, it was fine at first in the pharmacy. Uh, I thought I was doing better, and um, could handle myself being in front of the medication. Um, but after a couple of weeks with everything being right there in front of me and seeing how easy it was to take it, I started taking them from the pharmacy." Sentencing Transcript at 43. The trial court noted that "[t]he best I can determine, [Snodgrass] went to work for CVS Pharmacy with a substance problem," that Snodgrass "said she went about 2 weeks, but she just couldn't control herself," and that "I think the more reasonable interpretation is that [] Snodgrass had an addiction [and] she went to CVS Pharmacy with the intent from the get go to steal drugs." Id. at 90. With

5

respect to the court's finding that Snodgrass attempted to minimize her criminal activity, the record reveals that she initially indicated to law enforcement that a woman in Terre Haute had threatened her to obtain the pills, and that her story changed somewhat over time. The court also noted that "[p]art of [Snodgrass's] statement was the time she was actually caught she had taken 500 . . . pills and placed them in a paper towel and hid them in the ladies room" and that she later stated "she didn't take those 500 pills [and] that the pharmacist that she was working for took the pill[s] [and] hid them to set her up," and the court found "that's just not believable." Id. at 90-91. The supplemental case report attached to the PSI states that Snodgrass said that in May she had gone to the bathroom and found the pills, that she felt it was a set up by the pharmacist, and that this was contrary to her previous statement.

The trial court considered the testimony and evidence regarding the investigation of Snodgrass's offenses and her statements at sentencing. Based upon Snodgrass's substance abuse and the timing of her employment at the pharmacy and the thefts, the trial court was free to infer that Snodgrass intended to steal prescription pills at the time she became reemployed at the pharmacy and to find her testimony regarding her thoughts at the time to be unpersuasive. Further, there was testimony that Snodgrass's statements to law enforcement changed somewhat over time. The trial court did not abuse its discretion in finding the facts that Snodgrass began working at CVS Pharmacy with the intent to steal the prescription pills and that she attempted to minimize her criminal activity to be aggravating circumstances.

6

The determination of mitigating circumstances is within the discretion of the trial court. Rogers v. State, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), trans. denied. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. Id. The trial court stated that Snodgrass "does have a child" but that it would not "consider that a big a mitigating factor as the defense would like . . . ." Sentencing Transcript at 89. The court was not required to give the same weight to this factor as Snodgrass desired. See Rogers, 878 N.E.2d at 272; see also Anglemyer, 868 N.E.2d at 491 (noting that the relative weight or value assignable to reasons properly found is not subject to review for abuse of discretion). We cannot say the trial court abused its discretion in determining the aggravating and mitigating circumstances and in ordering Snodgrass to serve two six-year sentences for her class B felony convictions consecutively.

With respect to home detention, after noting that the home of her child's father was an alternative for home detention if the home of her mother and stepfather was inappropriate due to the presence of firearms, her counsel stated "I do know this is a little unusual compared to how we normally do things, where we have a specific pre-approval, but I . . . just wanted to let the Court know [] how that happened, if the Court's willing to consider house arrest as an alternative." Transcript at 81. The trial court noted that Snodgrass's cousin indicated that Snodgrass said she had been providing pills to her child's father so he could distribute them to his friends. This information was contained in the supplemental case report attached to the PSI and was before the trial court at

sentencing. We cannot say that the court abused its discretion in finding that home detention was not appropriate.

## II.

The next issue is whether Snodgrass's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

In support of her position that her sentence is inappropriate, Snodgrass argues that she took pills from her employer on three occasions, the offenses were the unfortunate product of her slow progression from patient to addict, she suffers from depression and a brain tumor, she began taking larger doses of hydrocodone than prescribed to offset the pain of her increasingly worse migraines, she stopped abusing prescription drugs following her arrest and attends narcotics meetings regularly, she has a minimal criminal record consisting of two misdemeanor offenses for consumption of alcohol as a minor, she pled guilty without the benefit of a plea agreement and cooperated with police, she has a daughter to support and the support of her family, she was employed at the time of her sentencing hearing, she has lost her house, fiancé, and job as a result of her criminal conduct and has changed the people she associated with, and that the Indiana Risk Assessment System showed she was a low risk to reoffend. Snodgrass requests that this

court order that all of her sentences be served concurrent with each other and that she be allowed to serve the remaining portion of her sentence on home detention.

The State argues that Snodgrass's actions were not an isolated incident but demonstrated she had been involved in criminal activity over a significant amount of time and that she abused her position of trust at the pharmacy to surreptitiously obtain thousands of pills which she distributed to various individuals. The State further argues that Snodgrass's guilty plea was most likely a pragmatic decision in light of abundant evidence against her. The State also contends that Snodgrass's criminal history shows that she had not been leading a law abiding life for some time and that her prolonged drug dealing was indicative of the risk that she would commit another crime.

Our review of the nature of the offense reveals that Snodgrass took approximately 500 hydrocodone tablets from her employer, CVS Pharmacy, on three occasions during the months of December 2011 and January and May 2012. Additionally, she possessed the controlled substance with intent to deliver in April and in May 2012. At sentencing, Detective Deanna Jones with the Indiana State Police Drug Enforcement Section testified that the street value of hydrocodone is $3.00 to $7.50 per tablet and that a bottle of 300 hydrocodone pills could be worth $900 to $2,100. Detective Jones testified that Snodgrass admitted that she had sold 2,500 hydrocodone tablets to her cousin between November 2011 and May 2012. Snodgrass testified that she provided a total of 200 hydrocodone pills to her cousin on two separate occasions to sell at his place of employment and that she received approximately $700 from her cousin. She also indicated that she consumed some of the pills and sold some of them. In sum, Snodgrass

9

stole a large quantity of prescription pills from her employer on each of three different occasions over a six-month period and sold a sizable portion of those pills on two occasions during that time.

Our review of the character of the offender reveals that Snodgrass pled guilty without a plea agreement and that her criminal history consists of two misdemeanor convictions for consuming alcohol as a minor. Snodgrass testified that she first worked for CVS Pharmacy for almost two years beginning when she was eighteen years old, that she returned to work there in November 2011, and that she began taking the tablets from the pharmacy after a couple of weeks working there. She also testified that she had been diagnosed with depression and a tumor on her pituitary gland, she was prescribed hydrocodone when she was eighteen years old, she continued to take the drug until she lost her insurance in 2011, and that at some point she began taking greater dosages than prescribed and developed a substance abuse problem. She further testified that, after her employment with CVS ended, she worked for a restaurant full time and was employed at the time of the hearing and that she attends narcotics anonymous meetings weekly. Detective Jones testified that Snodgrass first claimed that someone threatened her to obtain the pills, that her story changed somewhat over time, and that she later claimed she sold some of the pills to her cousin, which was confirmed by law enforcement. The Indiana Risk Assessment System tool in the PSI shows that Snodgrass scored an overall low risk to reoffend but a high risk to reoffend with respect to substance abuse and a moderate risk to reoffend with respect to criminal attitudes and behavioral patterns. According to the PSI, the court had ordered Snodgrass to enroll in and complete a drug

and alcohol program twice through the Vigo County Alcohol and Drug Program. While Snodgrass states that she has already suffered by, among other things, losing her job, her employment would have been terminated due to her theft from her employer regardless of the sentence she ultimately received. We also note the trial court imposed the minimum sentence of six years for each of Snodgrass's class B felony convictions and ordered her sentences for the class D felony convictions to be served concurrent with the class B felony sentences for an aggregate sentence of twelve years, and that the court noted at sentencing that Snodgrass could have received a maximum sentence of forty-nine years.

After due consideration of the trial court's decision, we cannot say that Snodgrass has met her burden of showing that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

## CONCLUSION

For the foregoing reasons, we affirm Snodgrass's sentence.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.